# Commonwealth, by amendment, City of Scranton, ex rel. Carman *versus* Durkin et al.

1. The Acts of April 7th, 1830 (P. L. 391), and April 16th, 1845 (P. L. 533), requiring the treasurer of the proper city or county to account to the Auditor-General for the fees of the mercantile appraiser, makes this a duty owing to the Commonwealth. Therefore, when, in pursuance of law, a city treasurer has given two official bonds, one to the city, conditioned that he " shall well and faithfully execute the duties of the said office according to law, and shall pay over the moneys received by him as directed by the proper authorities," and the other to the Commonwealth, conditioned " for the faithful discharge of all duties enjoined upon him by law in behalf of the Commonwealth, and for the payment according to law of all moneys received by him for the use of the Commonwealth," on default of payment by him of the appraiser's fees received by him, the sureties on the bond given to the city are not liable, the breach having been solely under the bond given to the Commonwealth.

2. Whether these fees should be paid by the county or city treasurer to the state treasurer, and by him to the appraiser, or directly by the city or county treasurer to the appraiser, not decided.

February 25th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lackawanna county :* Of January Term, 1885, No. 268.

This was an action of debt, by the Commonwealth ex rel. C. Q. Carman against A. Durkin, administratrix of the estate of Thomas Durkin, deceased ; A. M. Renshaw, C. M. Koon, J. G. Sanderson, B. H. Throop, E. L. Gardner, C. W. McKinney, and I. F. Fuller, administrator of the estate of W. P. Carling, deceased, upon the official bond given by Thomas Durkin to the city of Scranton, as treasurer of said city, the other defendants being sureties on said bond. Plea, nil debet.

At the suggestion of C. Q. Carman, an amendment· was allowed changing the name of the plaintiff to the City of Scranton ex rel. C. Q. Carman.

The facts of the case, as they appeared in a special verdict, were as follows :—

In December, 1876, C. Q. Carman was appointed mercan-

[Commonwealth *v.* Durkin.]

tile appraiser for the city of Scranton, and duly qualified for the year 1877; he made an appraisement consisting of 609 in number of persons liable to mercantile appraisement, which he certified to the treasurer of the city, who received the fees upon said appraisement, amounting in the aggregate to $299.50, and paid over to the plaintiff, C. Q. Carman, the sum of twenty-five dollars, leaving a balance unpaid of $274.50. On the 16th day of December, 1876, the treasurer of said city executed his bond, which was approved on the 18th day of December, 1876, of which the following is a copy:—

" Know all men by these presents, that we, Thomas Durkin, A. M. Renshaw, C. M. Koon, Benjamin H. Throop, E. L. Gardner, J. Gardner Sanderson, C. W. McKinney, and William P. Carling, all of the city of Scranton, Pennsylvania, and Thomas B. Wall, of Tunckhannock, Wyoming county, Pennsylvania, are held and firmly bound unto the city of Scranton in the sum of one hundred thousand dollars, lawful money of the United States, to be paid to the said city of Scranton, her certain attorney, successors or assigns, to which payment well and truly to be made and done we do bind ourselves, our heirs, executors and each of us jointly, severally and firmly by these presents. Sealed with our seals, dated the 16th day of December, A. D. 1876.

" Whereas the said Thomas Durkin on the 15th day of February, A. D. 1876, was duly elected treasurer of said city of Scranton, and whereas the said Thomas Durkin by letter of attorney bearing date the 14th day of December, A. D. 1876, has appointed A. M. Renshaw as his deputy to do and perform the acts appertaining to said office of treasurer of the city of Scranton.

" Now, therefore, the condition of this obligation is such that if said Thomas Durkin so elected as aforesaid, and the said A. M. Renshaw shall well and faithfully execute the duties of the said office according to law, and shall pay over the moneys received by them as directed by the proper authorities, and at the end of their term shall settle up and pay over to the successor in said office the balance of the money which remains in their hands then this obligation to be void, else to be in full force and virtue."

                    " THOMAS DURKIN, [seal] "
                    " A. M. RENSHAW, [seal] "
                    " C. M. KOON, [seal] "
                    " BENJAMIN H. THROOP, [seal] "
                    " THOMAS B. WALL, [seal] "
                    " E. L. GARDNER, [seal] "
                    " J. GARDNER SANDERSON, [seal] "
                    " C. W. McKINNEY, [seal] "
                    " W. P. CARLING. [seal] "

On the back of the bond was the following indorsement:—
"Bond approved this 18th day of December, 1876."

ROBERT H. McKUNE,

*Mayor.*   [seal].

The jury found the balance due and unpaid the said C. Q. Carman to be $274.50, and concluded that if upon the whole matter the court should be of opinion that the issue was proved for the plaintiff, they found for the plaintiff, assessing the damages at $274.50; but if the court should be of the opposite opinion then they found for the defendants; the verdict to be entered for such an amount on this bond, with the right to collect such amount in the suit as the court should order.

The court (HAND, J.,) filed an opinion, inter alia, as follows:—

" The sole question raised by this special verdict is whether the defendants, being obligors and sureties on the official bond recited, are liable in this action brought on this bond for default of the city treasurer in not paying over to C. Q. Carman the amount of appraiser's fees claimed by him.   If this bond covers this part of the treasurer's duties then they are liable ; if it does not, then they are not liable.   At the first blush the language of this bond would seem broad enough to cover the liability, for its condition is that " he shall well and faithfully execute the duties of the said office according to law, and shall pay over the moneys received by him as directed by the proper authorities," etc.   Also the city charter of the city of Scranton, Act April 23d, 1866 (P. L., 1040), section 11 provided for " sureties for the faithful performance of their trusts " on the part of the city treasurer.   But we must bear in mind that this bond is given by the city treasurer as such—an official bond in his character as city treasurer solely.   It is also true that the duties imposed upon him in regard to the appraisement and collection of mercantile taxes are in no sense a part of his duties as treasurer of the city of Scranton.   The city of Scranton is no party to these duties, and is not concerned with regard to them.   It is true that the laws of the Commonwealth have placed these duties upon the city treasurer, but they are duties which he is to perform with reference to the state and not to the city.   For these duties he is required to give an additional bond to the Commonwealth, and it is this fact which leads us to the conclusion that for these fees of the mercantile appraiser this bond to the city cannot be held.   Under the Acts of Assembly, as we read them, the city treasurer was compelled to give bond to the Commonwealth to secure all moneys collected under the mer-

cantile appraisement laws.  We think this fact is settled by
the Act of 15th April, 1828 (P. L. 491), and the Act of 7th
April, 1830, section 7 (P. L. 390).

"The Act of 1828 provides 'that it shall be the duty of all
the city and county treasurers thereafter,' . . . . . 'to give
bonds to the Commonwealth conditioned for the payment ac-
cording to law of all moneys that shall be received by them
for the use of the Commonwealth, and for the faithful dis-
charge of all duties enjoined upon them by existing or future
laws in which the Commonwealth is concerned: '(P. D. 1827–
28, P. L. 491, section 1.)   And the law which made county
treasurers' bonds given to commissioners a security for moneys
of the Commonwealth was repealed by the third section.  Now
if there were any doubt whether these duties of the treasurer
in relation to the mercantile appraisement are duties 'enjoined
upon him by existing or future laws in which the Common-
wealth is concerned,' that doubt is settled by the Act of 1830,
section 10.   This Act relates to the mercantile appraisement
especially, and is one of the laws now in force.   It provides
'that the aforesaid city and county treasurers previous to en-
tering upon the duties enjoined upon them by this Act shall
enter into bonds conditioned for the faithful performance of
their trust to the Commonwealth according to the provisions
of the Act of 15th April, 1828, relative to treasurers' bonds,'
etc.   It was part of the duties of the treasurer to receive the
fee then due the constable for each name correctly returned
and pay it out of the funds created by the Act.   (See sec-
tion 9.)

"By the Act of 15th April, 1834, sections 33 and 34, county
treasurers are required to give two bonds, one to the county
and one to the Commonwealth.   The condition of the bond to
the Commonwealth is practically the same as that required by
the Act of 1828 and 1830.   The language is 'for the faithful
discharge of all duties enjoined upon him by law in behalf of
the Commonwealth and for the payment, according to law, of
all moneys received by him for the use of the Commonwealth.'
(Purdon 306, pl. 9.)

"The charter of the city of Scranton in force at the time
when this bond was given (Act 30th March, 1867, section 7,
P. L. 632), provides for the mercantile appraiser of said city,
and the same section provides for a bond to the Common-
wealth for all moneys received by him for the use of the Com-
monwealth, . . . . . as treasurers of counties are required to
do.   It also provides for the payment of appraisers' fees.

"This places the treasurer of the city of Scranton as regards
his bonds in the same category as treasurers of counties under
the general laws of the state, and fixes the bond, as we con-

clude that it is intended to cover the duties of treasurer in relation to appraisers' fees as specifically the bond given to the Commonwealth, and not the bond given to the city of Scranton.

"The authorities are clear that where a special bond is required for a special fund or purpose, general bondsmen are not liable : Commonwealth v. Toms, 9 Wr., 408 ; Commonwealth v. Hilgert, 5 P. F. S., 236 ; State v. Corey, 16 Ohio St., 17 ; Supervisors v. Ehlers, 45 Wis., 281.

"We must therefore conclude that these defendants under the facts found in this special verdict are not liable, and judgment must be entered on the special verdict in favor of the defendants. . . . . ."

Judgment was accordingly entered for defendants on the special verdict. Plaintiff thereupon took this writ, assigning for error the entering of this judgment.

*Lemuel Amerman*, for plaintiff in error.—By the Act of April 16th, 1845 (P. L. 533), authorizing the appointment of an "appraiser of mercantile taxes" by the Courts of Common Pleas of Allegheny and Philadelphia counties, it is made the duty of the treasurer of the proper city or county to receive and collect, together with the fees of the appraiser and his own fee, the sums to be paid for licenses. The Act of April 22d, 1846, extending this provision to the other counties in the state, directs that an account of the mileage being verified by the affidavit of the appraiser, it shall be paid by the treasurer of the county out of any state taxes in his hands, thus leaving the fees as they were before—to be paid by the county treasurer as such to the appraiser.

The Act of March 13th, 1847, requiring the costs of collecting mercantile taxes to be paid out of the state treasury on the warrants of the Auditor General, and repealing so much of any law as requires the payment of these costs from the county treasurer, refers to the costs of suit, as provided for in the Act of March 4th, 1824 (8 Smith's Laws, 199). The matter of collecting fees was therefore not touched upon. The collection and payment of these fees is no part of the treasurer's duty to the state but to the city, and the bondsmen on his bond to the former cannot be liable, as he was responsible thereby only for "moneys received by him for the use of the Commonwealth:" Act of March 30th, 1867, section 7, P. L. 632.

The Act of April 15th, 1828, is no longer in force, being consolidated into the Act of April 15th, 1834 (P. L. 542), which makes the condition of the bond for all duties enjoined by law in behalf of the Commonwealth, and for payment ac-

[Commonwealth v. Durkin.]

cording to law of all moneys received for the use of the Commonwealth. Even if the former Act is in force, the Commonwealth is not concerned in the collection and payment of the fees, as has been already shown. Under the Act of 1830 the treasurer did not receive the constable's fees, but merely paid them out of the state funds. This provision is repealed by the Act of 1845, under which the appraiser's fees are paid by the vendor of merchandise to the treasurer of the city or county for the appraiser and not for the state, which is not concerned in the matter.

*George Sanderson, Jr.* (*James H. Torrey* with him), for defendants in error.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

The seventh section of the supplement to the charter of the city of Scranton (Act of 30th March, 1867, P. L., 630), provides "that the treasurer of said city shall be required to give bonds to the Commonwealth for all moneys received by him for the use of the Commonwealth, and shall settle his accounts with the Auditor General, as treasurers of counties are required to do." It also provides that the mercantile appraiser appointed for the city, "shall receive the same fees for his services, and be paid in like manner as the appraiser appointed by the commissioners of Luzerne county are paid."

Under this law the treasurers of the city of Scranton are required to give bonds and settle their accounts with the Auditor General in the same manner as treasurers of counties are required to do, and the appraisers are to be paid in the same manner as county appraisers of Luzerne county are paid. By the 33d and 34th sections of the Act of 15th April, 1834, Purd., 306, pl. 8 and 9, county treasurers are required to give two bonds, one to the county conditioned for a just account of all moneys that may come into their hands on behalf of the county, and the other for the faithful discharge of all duties enjoined upon them by law on behalf of the Commonwealth, and for the payment of all moneys received by them for the use of the Commonwealth. In the present case, the city treasurer received the fees due the appraiser, as well as the license fee from the persons appraised, and the question is whether his obligation to pay the appraiser's fees over, arises under the bond given to the city, or under the bond given to the Commonwealth. That depends upon whether the duty to make such payment is a duty to the Commonwealth or to the city. By the 8th section of the Act of 16th April, 1845: Bright. Purd., 1458, pl. 14, the appraisers are required to fur-

nish to the treasurer of the proper city or county a certified list of the dealers, and the treasurer is required, within twenty days thereafter, to transmit to the Auditor General a copy of such list; and he is also required to "receive and collect, together with the fees of the appraiser, and his own fee, the sums to be paid by such dealers for their licenses in the manner directed by law."

Under this law it is very plain that the duty of the treasurer to collect, and therefore to account for the fees of the appraisers is a duty owing to the Commonwealth. This is made still more clear by the seventh section of the Act of 7th April, 1830, Purd., 1458, pl. 15, which provides that "it shall be the duty of the Auditor General to charge the treasurers of the said cities or counties with the amount payable by the several persons mentioned in said lists." The 12th section of the Act of 22d April, 1846, extended the 5th, 6th, 7th and 8th sections of the Act of 16th April, 1845, which was originally confined to the counties of Philadelphia and Allegheny, to all the remaining counties of the Commonwealth, and fixed the compensation of appraisers at thirty-seven and a half cents for each certificate of license issued, and three cents for each mile travelled. It also directed an account of the mileage to be made out and verified by affidavit, and that upon approval by the treasurer, the same should be paid by the treasurer out of any state taxes in his hands. There is perhaps some doubt owing to the peculiar phraseology of the latter part of the section, whether the treasurer was to pay the appraiser's fees as well as his mileage out of state taxes in his hands, but it is not very material to settle the doubt, because the 1st section of the Act of 13th March, 1847, Purd., 1458, pl. 17, repeals so much of any law as requires payment from county treasurers of the costs of collecting mercantile taxes, and directs that they shall be paid out of the state treasury on the warrants of the Auditor General. If the expression, "costs of collecting," includes the appraiser's fees, then, of course, the Commonwealth is interested in their payment, and if not, the law is left as it was before, in which event also the Commonwealth is interested, as we have seen. The 8th section of the Act of 15th April, 1850, Purd., 1458, pl. 18, directed that the mileage of appraisers should be paid by the state treasurer on the warrant of the Auditor General, and repealed so much of the 12th section of the Act of 22d April, 1846, as authorized county treasurers to pay it. It is not easy to see why this Act was passed, if the Act of 13th March, 1847, was limited to mileage, as in that event the Act of 1850 would be a mere repetition of the Act of 1847. But however that may be, and conceding that the Act of April 22d, 1846, § 12, is not clear in

[May *v.* Bank.]

directing how the appraiser's fees shall be paid, we think it plain that the 7th section of the Act of April 7th, 1830, in connection with the 8th section of the Act of 16th April, 1845, makes the collection, adjustment and payment of the appraiser's fees a Commonwealth matter.   It is true this legislation does not direct the fees to be paid out of the state treasury, nor indeed does it, or any other legislation to which we are referred, direct them to be paid out of any treasury, but it does direct that the treasurer shall collect the appraiser's fees, with the license fees, and shall transmit to the Auditor General a certified list of all dealers subject to the tax, and that the Auditor General shall charge the treasurers with the amounts payable by the persons mentioned in the lists.   The duty of collecting the appraiser's fees therefore is as much a Commonwealth duty as the duty of collecting the tax itself, and when collected the whole account is to be settled with the Auditor General, who is a state and not a county officer.   Of course the appraiser's fees belong to the appraiser, but the duty of paying them is a duty enjoined by law in behalf of the Commonwealth, and this brings it within the very terms of the conditions of the bond required to be given by treasurers, both of cities and counties, to the Commonwealth.   Whether these fees must be paid by the county or city treasurer to the state treasurer, and by him to the appraiser, or whether they may be paid directly by the city or county treasurer to the appraiser, it is not material in this case to decide, as there was no payment whatever of the amount now claimed, and there was an undoubted breach of condition in that respect.   But as we are of opinion that the bond in suit was not the one whose condition was broken, there can be no recovery in this action.

Judgment affirmed.